IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| Cedar Real Estate Group III, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Ryan Companies US, Inc. and Manko Window Systems, Inc.,<br><br>Defendants. | Civil Action No. 1:25-cv-00146<br><br>Complaint<br><br>Jury Demanded |

Plaintiff Cedar Real Estate Group III, LLC files the following Complaint against Ryan Companies US, Inc. and Manko Window Systems, Inc.

***Parties***

1. Cedar Real Estate Group III, LLC ("CREG III") is a limited liability company organized pursuant to Iowa Code chapter 489 with its principal place of business in Cedar Rapids, Iowa. Ten traditional trusts (not business trusts) are the members of CREG III. The trustees of these ten trusts are citizens of the States of South Dakota, Florida, and Illinois. The trustees of these trusts are not citizens of the States of Minnesota or Kansas.

2. Ryan Companies US, Inc. ("RYAN") is a corporation incorporated pursuant to Minnesota law with its principal place of business in Minneapolis, Minnesota.

3. Manko Window Systems, Inc. ("MANKO") is a corporation incorporated pursuant to Kansas law with its principal place of business in Manhattan, Kansas.

***Jurisdiction***

4. This Court has jurisdiction because there is complete diversity of citizenship among the Plaintiff and the Defendants as well as because the amount in controversy exceeds the present minimum requirement of $75,000 pursuant to 28 U.S.C. § 1332.

***Venue***

5. Venue is proper in this Court because this district is the location of the project giving rise to the parties' claims.

***Facts***

6. On July 7, 2014, CREG III and RYAN entered into an AIA Document A141 – 2004 Standard Form of Agreement Between Owner and Design-Builder ("AGREEMENT") for the professional design services and construction of the project known as the CRST Center ("PROJECT"). A copy of the AGREEMENT is Exhibit 1.

7. The AGREEMENT defined the Design-Build Documents as including, among other documents, the Design-Builder's Proposal dated June 7, 2014, which consisted of the CRST Center Contract Exhibit and the CRST Center plans, and the AIA Document A141 – 2004 Exhibit A Terms and Conditions. [*Redacted Exhibit 1*] A copy of the AIA Document A141 – 2004 Exhibit A Terms and Conditions is Exhibit 2.

8. The AIA Document A141 – 2004 Exhibit A Terms and Conditions included the following warranties:

> **§ A.3.5 WARRANTY**
> **§ A.3.5.1** The Design-Builder warrants to the Owner that materials and equipment furnished under the Design-Build Documents will be of good quality and new unless otherwise required or permitted by the Design-Build Documents, that the Work will be free from defects not inherent in the quality required or permitted by law or otherwise, and that the Work will conform to the requirements of the Design-Build Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Design-Builder's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Design-Builder, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Owner, the Design-Builder shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

[*Exhibit 2*]

9. The AIA Document A141 – 2004 Exhibit A Terms and Conditions provides CREG III

with a direct right of action against contractors and subcontractors for any breach of warranty:

> **§ A.5.5** By appropriate agreement, written where legally required for validity, the Design-Builder shall require each Contractor, to the extent of the Work to be performed by the Contractor, to be bound to the Design-Builder by terms of the Design-Build Documents, and to assume toward the Design-Builder all the obligations and responsibilities, including the responsibility for safety of the Contractor's Work, which the Design-Builder, by these documents, assumes toward the Owner. Each subcontract agreement shall preserve and protect the rights of the Owner under the Design-Build Documents with respect to the Work to be performed by the Contractor so that contracting thereof will not prejudice such rights, and shall allow to the Contractor, unless specifically provided otherwise in the contract agreement, the benefit of all rights, remedies and redress against the Design-Builder that the Design-Builder, by the Design-Build Documents, has against the Owner. Where appropriate, the Design-Builder shall require each Contractor to enter into similar agreements with Subcontractors. The Design-Builder shall make available to each proposed Contractor, prior to the execution of the subcontract agreement, copies of the Design-Build Documents to which the Contractor will be bound, and, upon written request of the Contractor, identify to the contractor terms and conditions of the proposed subcontract agreement that may be at variance with the Design-Build Documents. Contractors will similarly make copies of applicable portions of such documents available to their respective proposed Subcontractors. All warranties provided by the Contractors and Subcontractors, including all express and implied warranties in the Design-Build Documents and the agreements between the Design-Builder and the Contractors and Subcontractors and all warranties provided by law, shall run to and be for the benefit of the Owner, and the Owner shall have a direct right of action against the Contractors and Subcontractors for any breach of said warranties.

[*Exhibit 2*]

10. CREG III and RYAN specifically negotiated section A.5.5 of the AIA Document A141 – 2004 Exhibit A Terms and Conditions and agreed to add specifically negotiated language as a new paragraph. CREG III bargained for warranties for the benefit of CREG III and for a direct right of action for any breach of warranty against RYAN or its contractors and subcontractors. CREG III entered into the AGREEMENT in reliance on RYAN’s and its subcontractors’ warranties and right to enforce the warranties for the PROJECT.

11. The AGREEMENT contemplated the development of specifications by a design professional that establish the quality levels of materials and systems required. Specifically, the

CRST Center Contract Exhibit provided, in relevant part: "The curtainwall and solar control louver specifications will be written as a delegated design, performance specification, allowing for multiple standard, custom or even unitized systems to be considered."

12. On November 5, 2014, RYAN's design professional, OPN Architects, published the Project Specifications for the PROJECT. The project specifications included section 08 44 13 – Glazed Curtain Wall, which is attached as Exhibit 3. In relevant part, subsection 1.11 Component Design and Performance of the Glazed Curtain Wall specifications provided:

> E. Glass
>
> * * *
>
> 3. Provide heat treated glass. Annealed glass is not acceptable.
>
> * * *
>
> 5. Insulating glass in vision and spandrel areas shall not experience fogging, wetting or staining within the sealed space, spacer corrosion, spacer migration, adhesive or cohesive failure of primary or secondary edge seal.
>
> * * *
>
> 8. Glass shall not experience spontaneous breakage.

[*Exhibit 3*]

13. In relevant part, subsection 1.18 Warranty of the Glazed Curtain Wall specifications provided:

> A. Provide written warranty agreeing to repair or replace defective materials and workmanship during warranty period. Defective materials and workmanship include, but are not limited to:
>
> * * *
>
> 8. Glass breakage including: secondary breakage caused by falling glass; spontaneous breakage of heat treated glass.
>
> 9. Failure of insulating glass edge seal as evidenced by frost, condensation, water, dust, corrosion or reflective coating

damage within sealed air space.

* * *

B. Warranty period for entire system shall be 5 years from date of substantial completion. System warranty includes materials and labor.

C. Certain materials are required to have special warranties. Special warranties shall not limit or reduce requirements of system warranty. Special warranties may originate, in part or in whole, with manufacturers or fabricators and pass through Contractor to Owner. Warranties as written or interpreted by manufacturers or fabricators shall not limit or reduce special warranty requirements of this Section.

1. Insulating glass that experiences failure of edge seal as defined in this Section shall be replaced at no charge (material only) for minimum 10 year period beginning on date of manufacture. . . .

[*Exhibit 3*]

14. In relevant part, subsection 2.01 of Materials of the Glazed Curtain Wall specifications provided:

C. Glass

* * *

2. Provide safety glazing as required by code.

3. Provide heat strengthened vision and spandrel glass. Provide fully tempered glass only where safety glass is mandatory or where design pressures exceed capacity of heat strengthened glass. Annealed glass is not acceptable.

[*Exhibit 3*]

15. On September 23, 2014, RYAN and East Moline Glass Co. ("EMG") entered into a subcontract agreement pursuant to which EMG agreed to act as the glazing contractor for the PROJECT.

16. EMG entered into multiple purchase orders with MANKO for the fabrication of IGUs

for the Project.

17. On March 29, 2015, MANKO sent a letter to EMG about MANKO's "capabilities regarding the CRST project. The Glazed Curtain Wall, 08 44 13, specification section has some very stringent requirements that MANKO was not aware of at the time of our quotation." A copy of MANKO's letter dated March 29, 2015 is Exhibit 4.

18. RYAN as the Design-Builder, EMG as the glazing contractor, and MANKO as a subcontractor and the IGU fabricator provided a curtain wall system for the Project.

19. The glass in the curtain wall system for the Project has exhibited three specific non-conformances or defects:

a. RYAN provided fully tempered glass in the insulated glass units (IGUs) in lieu of heat strengthened glass for the substantial majority of vision IGUs at the Project.

b. RYAN and MANKO provided certain IGUs with annealed glass. EMG's batch records indicate sixty-eight IGUs contain annealed glass.

c. RYAN and MANKO provided insulated glass units that have experienced failure of the edge seal resulting in the frosting of approximately nineteen percent (19%) of the units tested.

20. In lieu of pursuing formal dispute resolution options in 2019, CREG III, RYAN, EMG, and MANKO executed a tolling agreement, which in relevant part, provided: "CREG III, Ryan Companies, EMG, and Manko agree that the time elapsed from May 21, 2019 through the end of the forbearance shall not count for purposes of determinations pertaining to statutes of limitations, statutes of repose, laches or any other defense based upon the passage of time. However, nothing in this paragraph shall bar or affect any defense or claim available to Ryan

Companies, EMG, or Manko as of May 21, 2019." A copy of the Tolling Agreement is Exhibit 5.

***Count 1 – Breach of Contract against RYAN***

21. CREG III incorporates the allegations from paragraphs 1 through 20 above.

22. CREG III and RYAN entered into a valid and enforceable design-build contract for the PROJECT.

23. CREG III fully performed its obligations under the AGREEMENT.

24. RYAN breached the AGREEMENT by:

   a. Providing fully tempered glass in lieu of heat strengthened glass at locations other than locations where safety glass is mandatory or where design pressures exceed capacity of heat strengthened glass in violation of specification section 08 44 13 2.01.C.3; and

   b. Providing annealed glass at certain locations in lieu of heat strengthened glass in violation of specification sections 08 44 13 1.11.E.3 and 08 44 13 2.01.C.3.

25. These breaches of the AGREEMENT have resulted in harm to CREG III, specifically, certain fully tempered IGUs have fractured due to nickel-sulfide inclusions and CREG III will in the future incur expenses to correct the nonconformances and CREG III has suffered a diminution in value of the PROJECT due to the nonconformances.

Therefore, CREG III respectfully requests a judgment in its favor and against RYAN for compensatory damages resulting from RYAN's breach of contract, including without limitation the cost to correct the nonconformances, loss of use/rent abatement, and/or the diminution in value resulting from the nonconformances, plus accrued interest, attorney's fees, costs and expenses, and other relief that is just and reasonable.

***Count 2 – Breach of Warranty against RYAN***

26. CREG III incorporates the allegations from paragraphs 1 through 25 above.

27. In section A.3.5.1 of the AIA Document A141 – 2004 Exhibit A Terms and Conditions, RYAN warranted that the Work would conform to the requirements of the Design-Build Documents, which includes the Glazed Curtain Wall specifications.

28. The Work does not conform to the Glazed Curtain Wall specifications, specifically:

   a. Fully tempered glass only should have been provided where safety glass is mandatory or where design pressures exceed capacity of heat strengthened glass in accordance with specification section 08 44 13 2.01.C.3;

   b. Annealed glass should not have been provided in accordance with specification sections 08 44 13 1.11.E.3 and 08 44 13 2.01.C.3; and

   c. The edge seal has failed within certain IGUs resulting in frost during cold temperatures in violation of the written warranty requirements in section 1.18 of the Glazed Curtain Wall specifications.

29. These breaches of the warranty have resulted in harm to CREG III, specifically, certain fully tempered IGUs have fractured due to nickel-sulfide inclusions and CREG III will in the future incur expenses to correct the nonconformances and CREG III has suffered a diminution in value of the PROJECT due to the nonconformances.

Therefore, CREG III respectfully requests a judgment in its favor and against RYAN for compensatory damages resulting from RYAN's breach of warranty, including without limitation the cost to correct the nonconformances, loss of use/rent abatement, and/or the diminution in value resulting from the nonconformances, plus accrued interest, attorney's fees, costs and expenses, and other relief that is just and reasonable.

### *Count 3 – Breach of Warranty against MANKO*

30. CREG III incorporates the allegations from paragraphs 1 through 29 above.

31. In accordance with subsection 1.18 Warranty of the Glazed Curtain Wall specifications, MANKO warranted "Insulating glass that experiences failure of edge seal as defined in this Section shall be replaced at no charge (material only) for minimum 10 year period beginning on date of manufacture." [*Exhibit 3*]

32. Certain IGUs at the Project have experienced failure of the edge seal.

33. MANKO is in breach of the warranty.

34. This breach of the warranty resulted in harm to CREG III, specifically, certain IGUs have exhibited frost and CREG III will in the future incur expenses to correct the nonconformances and/or CREG III has suffered a diminution in value of the PROJECT due to the nonconformances.

Therefore, CREG III respectfully requests a judgment in its favor and against MANKO for compensatory damages resulting from MANKO's breach of warranty, including without limitation the cost to correct the nonconformances and/or the diminution in value resulting from the nonconformances, plus accrued interest, attorney's fees, costs and expenses, and other relief that is just and reasonable.

CREG III demands a trial by jury on all issues triable to a jury.

Date: September 5, 2025

Respectfully submitted,

/s/ Jeffrey A. Stone

Roger W. Stone AT0007519
Jeffrey A. Stone AT0008829
Jacob W. Nelson AT0010431
Simmons Perrine Moyer Bergman PLC
115 Third Street, S.E., Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
Email: rstone@spmblaw.com
jstone@simmonsperrine.com
jnelson@spmblaw.com
*Attorneys for Plaintiff Cedar Real Estate Group III, LLC*